**STATE of Missouri, Respondent,**

v.

**Edmund LaFLAMME, Appellant.**

**No. WD 47396.**

Missouri Court of Appeals,
Western District.

Nov. 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Burton H. Shostak, St. Louis, Loramel P. Shurtleff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

HANNA, Presiding Judge.

The defendant was charged with trafficking drugs in the second degree by bringing into the state one hundred kilograms or more of marijuana, § 195.223.7, RSMo Supp.1992. He appeals from his conviction by the Circuit Court of Boone County, Missouri, for which he was sentenced to ten years imprisonment.

The facts viewed in the light most favorable to the conviction are as follows. On Thursday, February 6, 1992, Trooper Anthony Mattox of the Missouri State Highway Patrol was traveling eastbound on I–70 in Boone County. He observed defendant's pickup truck as it changed from the passing lane to the driving lane without signaling. The truck was also weaving in its lane. Trooper Mattox pulled the vehicle over.

The truck was occupied by the defendant, Edmund LaFlamme, and his wife. The trooper asked the defendant to accompany him to the back of his patrol car. The defendant's driver's license indicated that he lived in Santa Fe, New Mexico. When the trooper queried as to his destination, the defendant replied that he and his wife were moving to Connecticut. Trooper Mattox asked the defendant if he had anything in the truck that he should know about, like guns or drugs. The defendant said no.

The trooper then asked for proof of insurance. The defendant said that it was in the truck. The trooper went to the truck to retrieve the proof of insurance and asked the defendant's wife where they were going. She answered that they were driving to visit family in Connecticut and had to be back for work the following Monday.

The wife's response that they were driving from New Mexico to Connecticut for a week-end visit coupled with their different versions of the trip's purpose caused Trooper Mattox to become suspicious. He again asked the defendant if there was anything illegal in the truck. The defendant again denied the presence of contraband. The trooper asked if he could search the truck, to which the defendant replied, "I don't see that you need to."

Trooper Mattox then contacted a canine unit on his radio. He was told that he could meet Trooper David Mease and his dog, Argo, at the highway department shed lot about three miles down I–70, which was on the route defendant expected to use to travel through Missouri. Trooper Mattox then asked defendant to follow him to the shed lot so that the dog could check out the vehicle. The defendant returned to his truck and followed the patrol car to the lot.

At the lot, Argo jumped up into the back of the truck and indicated that drugs were present by "alerting."[1] Trooper Mease then uncovered twenty-two bales of marijuana wrapped in plastic which were located in the truck bed. A search of the passenger compartment of the truck revealed two loaded pistols, brass knuckles, and marijuana cigarettes.

Before trial, the defendant filed a motion to suppress the evidence of the marijuana which was overruled after a hearing. The defendant waived his right to a jury trial and was tried by the court. The evidence consisted of a re-submission of all the evidence taken at the time of the suppression hearing and stipulations of other facts. The defendant was convicted and sentenced to ten years imprisonment. The defendant appeals.

 In his first point on appeal, defendant argues that, in two respects, there is insufficient evidence to support the conviction. In reviewing a challenge to sufficiency of the evidence to support a conviction, we consider the evidence and all reasonable inferences in the light most favorable to the decision of the fact finder and disregard all evidence to the contrary. *State v. Villa–*

---

1. The meaning of the word "alerting" was described by Trooper David Mease: "Argo became increasingly exicted [sic] almost immediately and began digging and barking, indicating the presence of narcotics."

*Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992). We are limited to determining whether there was sufficient evidence from which the trial court could reasonably have found the defendant guilty, and we may not weigh the evidence. *Id.*

■ With respect to the sufficiency of the evidence, the defendant first argues that there was no evidence to support the conclusion that he brought the marijuana into the state of Missouri as charged in the information. *See* § 195.223.7, RSMo Supp.1992. The state adduced the following evidence which tends to prove that the defendant brought the marijuana into Missouri. The defendant and his wife were both residents of Santa Fe, New Mexico, and were driving to Connecticut. The truck, which was owned by the defendant and his wife, was registered and licensed in New Mexico. The defendant told the police officer that he had been driving a long time and was fatigued. They were transporting a very large amount of marijuana which was neatly packaged into twenty-two bales and wrapped in plastic. The drugs were loaded in the truck bed and were under some clothing and personal effects. There was no evidence that the marijuana had been harvested within the state boundaries. These facts are sufficient to prove that the marijuana was placed in the truck at some point prior to their entry into the state of Missouri as charged in the information.

■ Next, defendant argues that there was insufficient evidence to prove that he was aware of the marijuana's presence in the truck. This challenge also must fail. The evidence shows that the defendant knew he was carrying marijuana. There were clothes and personal effects which belonged to the defendant intermingled with the bales of marijuana in the back of the truck. *See State v. Purlee,* 839 S.W.2d 584, 588–89 (Mo. banc 1992). There were two loaded pistols in the passenger compartment of the vehicle from which a fact finder could reasonably infer that the defendant knew he was transporting something of substantial monetary value. *See Id.* at 589; *State v. Wilkerson,* 796 S.W.2d 388, 396 (Mo.App.1990). The presence of such a large amount of marijuana also tends to prove that the defendant was

conscious of his possession of the drugs. *See Purlee,* 839 S.W.2d at 588; *State v. Adkins,* 800 S.W.2d 28, 30 (Mo.App.1990). There was sufficient evidence from which the trial court could have found the defendant guilty of drug trafficking beyond a reasonable doubt. Point denied.

In his second point, defendant argues that the trial court erred in overruling his motion to suppress the evidence of the marijuana because it was obtained through an illegal search of his truck in violation of the Fourth Amendment.

■ First, we must determine whether this issue was properly preserved for appellate review. A ruling on a motion to suppress evidence is interlocutory only and preserves nothing for review. *Purlee,* 839 S.W.2d at 592. As a general rule, when a motion to suppress evidence is overruled, the defendant must object to the evidence when it is presented to the trial court for admission. *Id.* In this case, the trial consisted of submission of the evidence heard at the suppression hearing, plus stipulations by the parties as to venue, Trooper Mattox's identification of the defendant, chain of custody, and the lab report identifying the substance found in the defendant's truck to be marijuana. The state argues that since the defendant did not object to the admission of the evidence revealed by the search, he has waived review on that issue. However, an examination of the record shows that defense counsel intended that the submission of the suppression hearing evidence serve to preserve the issue for appellate review in the event that the defendant was convicted. While this is certainly not the preferable method of preservation, the intent was obvious. The trial court considered it as though a timely objection had been made, and we review the legality of the search on its merits.

■ The review of the trial court's order overruling the defendant's motion to suppress evidence causes the reviewing court to consider the facts stated favorably to the order challenged on appeal. *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. denied,* 480 U.S. 698, 107 S.Ct. 1596, 94

L.Ed.2d 678 (1987). We look "only to determine whether the evidence was sufficient to support the ruling." *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The trial court's decision on the motion to suppress should be sustained if the evidence is sufficient to sustain its finding. *Blair,* 691 S.W.2d at 260.

There were four basic steps which led to the discovery of the marijuana in the back of the defendant's truck: the initial stop of the vehicle; the three-mile drive to the highway department shed lot; the dog sniff of the truck; and the actual search of the truck bed. The defendant concedes the legality of the initial stop. The trooper properly stopped the defendant for traffic violations. *See State v. Hyland,* 840 S.W.2d 219, 220 (Mo. banc 1992). It is also not disputed that the dog sniff did not constitute a search within the meaning of the Fourth Amendment. *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); *United States v. Harvey,* 961 F.2d 1361, 1363 (8th Cir.1982), *cert. denied,* — U.S. ——, 113 S.Ct. 238, 121 L.Ed.2d 173 (1983). Therefore, the admissibility of the evidence is dependent upon the propriety of the drive to the shed lot and of the search itself. The state's theory for the propriety of the search is that the defendant consented to the drive to the shed lot and that the search itself was supported by probable cause.

First, defendant argues that he did not voluntarily accompany the trooper to the shed lot. Because the trooper's actions amounted to more than a brief investigatory stop as allowed by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and were unsupported by any reasonable suspicion, the argument continues, the defendant was unlawfully detained and the subsequent search was illegal. However, whether the trooper had a reasonable suspicion is irrelevant because there is sufficient evidence to support the trial court's order in that the defendant voluntarily consented to the drive to the highway department's lot.

■ To determine whether the defendant acted voluntarily when he drove to the shed lot, we consider the totality of the surrounding circumstances to determine whether an objective observer would conclude that the defendant made a free and unconstrained choice to do so. *Hyland,* 840 S.W.2d at 221. Trooper Mattox testified that he asked rather than ordered the defendant to accompany him to the shed lot so that the truck could be sniffed by a drug-detecting dog. He further testified that the defendant was free to leave at any time. There is conflicting testimony as to whether the trooper retained the defendant's driver's license. The defendant contends that the trooper kept the license and that this amounted to a form of coercion which vitiated his consent. However, Trooper Mattox testified that he could not recall whether he retained the license. The trial court had to have 'decided either that the trooper did not keep the license, or that retention of the license did not amount to coercion so as to nullify the defendant's consent. There is nothing in the record to suggest that threats or any other forms of coercion were used to obtain the defendant's compliance to the trooper's request. *See Id.; State v. Petrone,* 836 S.W.2d 484, 488 (Mo. App.1992). The trooper was alone and no weapons were drawn at any time. The defendant followed the patrol car off the highway and to the shed lot. The court was free to believe the testimony of Trooper Mattox and did so. There is evidence to support the court's finding that the defendant voluntarily drove to the shed lot and knew that the purpose of the trip was to allow a dog to sniff the vehicle for illegal drugs.

■ Finally, we determine whether the actual search of the truck bed and the discovery of the bales of marijuana were violative of the defendant's Fourth Amendment rights. The defendant argues that the search was illegal because he did not give his consent. However, his consent was not required because the trooper conducting the search had probable cause to believe that drugs were present in the truck. Probable cause to search a vehicle arises when "the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to

188

produce in a man of reasonable caution a belief that the contents of the automobile offend the law." *Burkhardt,* 795 S.W.2d at 404.

■ The facts of this case meet that test. After the defendant followed Trooper Mattox to the shed lot, a drug-detecting canine sniffed the truck and alerted, indicating that drugs were present in the vehicle.[2] A qualified drug-detecting dog[3] that identifies drugs upon its investigation of the premises or vehicle provides probable cause for the police to conduct a search to locate the contraband. *See, e.g., Garmon v. Foust,* 741 F.2d 1069, 1073 (8th Cir.1984); *United States v. Waltzer,* 682 F.2d 370, 372 (2d Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *State v. Taswell,* 560 So.2d 257, 257 (Fla.Dist.Ct.App.1990); *People v. Offen,* 78 N.Y.2d 1089, 578 N.Y.S.2d 121, 123, 585 N.E.2d 370, 372 (N.Y.1991). Because there was probable cause to search the truck for drugs, the evidence obtained was admissible.

Judgment Affirmed.

All concur.

---

2. It is clear that the dog sniff itself did not require consent or probable cause. "[T]he canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the

Fourth Amendment." *Place,* 462 U.S. at 707, 103 S.Ct. at 2644–45.

3. While the dog's qualifications were not discussed in great detail on the record, there is a stipulation which states that Trooper David Mease "is a trained canine handler with the Missouri State Highway Patrol and is currently assigned a drug detection canine named Argo." From this, it can be inferred that Argo was a qualified drug-detecting dog.