STATE of Missouri, Respondent,

v.

Scotty Ray ROARK, Appellant.

No. WD 67135.

Missouri Court of Appeals,
Western District.

June 12, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 2007.

Jeffrey Leon Dull, Windsor, for Appellant.

Jeff Mittelhauser, Sedalia, for Respondent.

RONALD R. HOLLIGER, Judge.

This is an appeal from a bench trial in which Scotty Ray Roark ("Roark") was convicted of driving while intoxicated. Roark raises two claims of error. We do not reach the first question about the sufficiency of the evidence because the arresting officer lacked reasonable suspicion to stop Roark and conduct field sobriety testing. The judgment of conviction is reversed.

## Factual and Procedural Background

Roark was driving east on highway 50 toward Sedalia, Missouri, when Trooper Douglas Barklage ("Barklage") received a call from dispatch that a "possible intoxicated driver [was] traveling towards Sedalia on 50 Highway." The information that Barklage received from dispatch included a vehicle description and a license plate number, both of which matched Roark's car. Barklage positioned his patrol car so that he could see eastbound traffic on highway 50 and waited there until Roark passed him. At that point, Barklage pulled into traffic behind Roark. Because traffic on the highway was heavy, Barklage was not able to follow immediately behind Roark, but he did keep Roark in view while driving east. At this point, Barklage was driving in the passing lane, while Roark was in the right-hand lane, ahead of Barklage. Barklage testified at trial that he saw Roark's passenger-side tires cross the fog line twice, onto the paved shoulder of the highway, but that none of the surrounding traffic had to take "evasive action" as a result.

Roark then pulled off of the highway, into the parking lot of a Ramada Inn, parked his car, and walked into the Ramada Inn. Because he was in the passing lane and traffic was heavy, Barklage was unable to follow Roark off of the highway. He was able, however, to keep Roark in view as he took the next exit and pulled into the Ramada Inn parking lot himself. Barklage then parked and followed Roark inside. Once inside, Barklage proceeded to the hotel bar, where he found Roark sitting at the bar and asked him to come back outside. Roark asked why and Barklage said he would explain outside.

Roark and Barklage returned to the parking lot together, and Barklage explained that he had "received a call of a possible intoxicated driver," that Roark's car matched the description, and that Barklage "needed to conduct an investigation to determine if he was, indeed, intoxicated." Barklage then conducted a standard set of field sobriety tests and arrested Roark.

Prior to trial, Roark filed a motion to suppress, in which he asserted that "[t]he arresting officer did not have probable cause or reasonable grounds to stop or initiate contact with [Roark] or to initiate an investigation or field sobriety testing of [Roark]." That motion was denied, and Roark filed a timely motion to reconsider. The trial court did not rule on the latter motion prior to trial. At trial, the State's sole witness was Barklage, the arresting officer whose testimony Roark's motion sought to suppress. Roark raised no objection during Barklage's testimony. Following that testimony, the State rested, and the following exchange occurred:

> THE COURT: Defendant's case in chief?
>
> MR. DULL: We'd move for a judgment of acquittal, Judge. I don't believe that he's—I mean, he testified that he doesn't know whether he drank in the bar or not.[1] I also filed a Motion to Reconsider my Motion to Suppress, and I'll deal with it whenever you want to deal with it.
>
> THE COURT: I'm comfortable with the Motion to Suppress ruling already. Does the State wish to argue?
>
> MR. MITTLEHAUSER: No, Judge.
>
> THE COURT: The case before me submits a submissible case. The motion is overruled for a judgment at the close of the State's evidence. Defendant wish to present any evidence?
>
> MR. DULL: Yes Judge.

The trial court ultimately found Roark guilty, entered judgment, and sentenced him to 270 days. This appeal follows.

## Standard of Review

When reviewing a trial court's denial of a motion to suppress, appellate courts consider "the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted." *State v. Goff,* 129 S.W.3d 857, 862 (Mo. banc 2004). This court defers to the trial court's findings of fact and credibility determinations, but reviews *de novo* "[t]he legal determination of whether reasonable suspicion existed" to make a stop. *Id.* Reasonable suspicion, in order to justify a stop, must be based upon "articulable facts [suggesting] that the person [stopped] was or is involved in criminal activity." *State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992). In applying these standards, our review is limited to the question of whether the trial court ruling is "supported by substantial evidence, and it will be reversed only if clearly erroneous." *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003).

## Discussion

Before turning to the merits of Roark's claim we must address the State's argument that any error in denying the motion to suppress is unpreserved and therefore reviewable only for plain error. Rulings on motions to suppress evidence are interlocutory only and preserve nothing for review. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). General-

---

1. During cross-examination, Barklage acknowledged that when he approached Roark, he was sitting at the bar with drinks in front of him, and that Barklage could not say whether Roark was drinking before he was asked to step outside.

ly, when such a motion is overruled, an objection to the evidence must be made when it is offered at trial to preserve the issue raised in the motion to suppress. *Id.*

The instant case is procedurally comparable to *State v. LaFlamme*, 869 S.W.2d 183 (Mo.App. W.D.1993), in which this court was confronted with a similar set of trial facts. In that case, the actual trial consisted primarily of the submission of evidence heard at a pre-trial suppression hearing. *Id.* at 186. We there noted that:

> The state argues that since the defendant did not object [at trial] to the admission of the evidence revealed by the search, he has waived review on that issue. However, an examination of the record shows that defense counsel intended that the submission of the suppression hearing evidence serve to preserve the issue for appellate review in the event that the defendant was convicted. While this is certainly not the preferable method of preservation, the intent was obvious. The trial court considered it as though a timely objection had been made, and we review the legality of the search on its merits.

*Id.* at 186; *accord State v. Mendoza*, 75 S.W.3d 842, 844 (Mo.App. S.D.2002).

In the instant case, Barklage testified at trial consistent with his pre-trial testimony, but Roark's motion to reconsider the suppression ruling was pending when Barklage testified at trial. At the close of that testimony, Roark drew the court's attention to the pending motion, and the court responded, "I'm comfortable with the motion to suppress ruling already." Neither the court nor the State raised any suggestion that Roark had waived his Fourth Amendment claim by allowing Barklage's testimony without objection. Indeed, rather than suggest that Roark's

argument was waived by the admission of Barklage's testimony, the court affirmed its prior ruling, thereby denying the motion to reconsider. As was the case in *LaFlamme*, an examination of this record reveals the obvious intent of everyone involved: Roark felt that the suppression issue was still before the trial court at the close of the State's evidence, the court ruled on the merits of that claim after Barklage's testimony, and the State raised no objection to this course of action. We therefore turn to the merits of Roark's claim.

■ The claim raises the question of whether Barklage's stop of Roark comported with the Fourth Amendment of the United States Constitution. That Amendment, which is co-extensive with article I, section 15 of the Missouri Constitution, protects the right of the people to be secure against unreasonable searches and seizures. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996). Generally, a warrant based upon probable cause is necessary to justify a search or seizure. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). An exception to this rule exists for what is commonly referred to as a *"Terry* stop." *Id.* In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that the Fourth Amendment is not offended by a brief investigatory stop by a law enforcement officer who has a reasonable suspicion, based upon specific and articulable facts, that the person stopped is involved in criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868.

■ Roark claims that the initial stop was improper because Barklage lacked the requisite reasonable suspicion to make an investigatory stop.[2] Roark does not, how-

---

2. Roark's claim before this court, like his

motion to suppress and motion to reconsider,

ever, identify the point at which Barklage "stopped" him for Fourth Amendment purposes. This court must identify that precise moment ·under the unique circumstances of this case, since we must assess "whether the officer's action was justified at its inception." *Id.* at 20, 88 S.Ct. 1868.

The State argues that no stop actually occurred, since Roark "exited his vehicle and entered the bar of his own volition" (i.e. no traffic stop occurred), and Barklage first encountered Roark in "a business establishment open to ·the general public." It is only at the point that a law enforcement officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen" that a stop has occurred. *Id.* at 29, n. 16, 88 S.Ct. 1868. By suggesting that Roark then "voluntarily went outside" with Barklage, the State seeks to characterize the entire exchange, up until the moment of arrest, as a consensual encounter. From this characterization, the State concludes that no stop occurred and no quantum of suspicion was necessary to support Barklage's actions.

■ We disagree. It is well established that law enforcement officers need not physically restrain citizens in order for courts to determine that a stop has occurred; rather, a "show of authority," *see id.*, is sufficient to effectuate a stop unless "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Thus, our Supreme Court has

found that voluntary compliance with a law enforcement officer's request can be a stop for Fourth Amendment purposes. *See State v. Deck,* 994 S.W.2d 527, 535–36 (Mo. banc 1999) (holding that a defendant's compliance with order "to sit up and display his hands" constituted a stop).

■ In response to Barklage's request that Roark return to the parking lot, Roark asked for an explanation. Barklage declined that request, saying that he would explain outside. At this point in the encounter, a reasonable person in Roark's position would not have felt free to disregard Barklage and "go about his business." *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382. We therefore determine that by the time that Roark and Barklage arrived outside, a Fourth Amendment stop had occurred and turn to the question of what articulable facts support the State's assertion that Barklage had a reasonable suspicion that Roark was involved in criminal activity.

■ Up until the moment that he took Roark outside for sobriety testing, Barklage had observed Roark driving, parking, entering the hotel, and then sitting at the bar. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry,* 392 U.S. at 27, 88 S.Ct. 1868. The only articulable fact offered to support the proposition that Barklage had developed a reasonable suspicion that criminal activity was afoot was the transgression of Roark's passenger-side tires over the fog line.

asserts both a lack of probable cause and a lack of reasonable suspicion. Probable cause is not a necessary predicate to an investigatory stop. *Terry,* 392 U.S. at 20, 88 S.Ct. 1868. While it would appear from the record that Barklage did have probable cause to arrest

Roark, *see Neer ·v. Dep't of Revenue,* 204 S.W.3d 315, 318–19 (Mo.App. W.D.2006), we do not address that question, since our resolution of the reasonable suspicion claim disposes of the case.

Barklage's trial testimony established that, despite the heavy traffic on the road at the time, none of the other cars on the road took evasive action to avoid Roark's car. Similarly, Barklage testified under cross-examination that Roark's car did not "go off" onto the paved shoulder and did not endanger anyone.

There is nothing in the record before this court to suggest that Roark was driving erratically or in a dangerous manner. Nonetheless, the State suggests that Barklage's observations confirmed information that he had received by way of an anonymous tip concerning a "possible intoxicated driver."

As a general rule, "the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable." *Illinois v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When assessing the reasonableness of police action in response to such tips, courts pay particular attention to whether such information is "supplemented by independent police investigation." *Id.* at 237–38, 103 S.Ct. 2317. Thus, where an anonymous tip contains "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted," its credibility is significantly enhanced by independent confirmation. *Id.* at 245, 103 S.Ct. 2317.

In the present case, however, no such details were contained in the anonymous tip received by Barklage. In addition to the characterization that Roark was a "possible intoxicated driver," that tip contained no more than a description of Roark's car and the fact that he was driving east on Highway 50. The moment Roark drove past Barklage, these facts were confirmed. This is not, however, the sort of confirmation that provides "reason to believe not only that the caller was honest but also that he was well informed." *See Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

The existence of a reasonable suspicion "is dependent on both the content of information possessed by police and its reliability." *Id.* at 330, 110 S.Ct. 2412. Appellate courts must consider both the quantity and quality of such information-in the totality of the circumstances presented-when determining whether "the requisite quantum of suspicion" has been established. *Id.* In the instant case, the anonymous information added nothing of substance to Barklage's first hand observations, and we must consider whether those observations justified the stop.

In his motions before the trial court and his brief before this court, Roark relies heavily upon *State v. Abeln,* 136 S.W.3d 803 (Mo.App. W.D.2004).[3] In that case, the trial court granted a motion to suppress evidence discovered during a traffic stop based on conduct similar to that observed by Barklage in the present case. *Id.* at 806–07. This court affirmed that judgment, noting that:

**3.** The order below denying Roark's motion to suppress distinguishes *Abeln* on the grounds that "[t]he conduct of the Defendant that was described by the informant in the *Abeln* case could have been legal conduct. Nothing described by the informant in the present case could be described as being possibly legal conduct." In fact, the conduct described by the informant in this case is largely unknown. The record discloses only that Barklage's dispatcher "received a call of a possible intoxicated driver traveling toward Sedalia on 50 Highway." The actual *conduct* at issue in the present case (as opposed to the *characterization* of an anonymous informant) is identical to the conduct at issue in *Abeln:* twice allowing the passenger side tires of a vehicle to cross the fog line without endangering adjacent traffic. *See Abeln,* 136 S.W.3d, at 807.

The trial court could reasonably have found that the State failed to prove by a preponderance of the evidence that a traffic stop was warranted to issue a citation or a warning for careless and imprudent driving, or any other traffic violation, in light of the ambiguity in the trooper's testimony as to how far onto or beyond the fog line Respondent's tires went or how long they remained there, and the fact that the officer did not initiate a stop immediately after observing this conduct, did not view it as "particularly dangerous," and did not issue a citation or warning to Respondent for this conduct.

*Id.* at 810 n. 7. The State properly points out that this language is not binding in the present case, as the outcome in *Abeln* was dictated by the standard of review, rather than the underlying facts. *Id.* at 807–08. Nonetheless, the quoted language is particularly applicable to the present case. Like the present case, *Abeln* involved an anonymous tip and a defendant whose passenger-side tires twice crossed the fog line, leading to a stop. As was the case in *Abeln*, Barklage did not initiate a stop upon observing Roark's transgressions over the fog line, suggesting that the conduct observed was not sufficiently erratic or dangerous to trigger an immediate stop. Given the fact that Barklage's first contact with Roark did not occur until Roark was no longer even driving his car, the instant case presents an even weaker reasonable suspicion argument than *Abeln.*

Ultimately, however, the similarities between the present case and *Abeln* are of no great import, given the nature of our review concerning the existence or absence of reasonable suspicion. That review is conducted in light of the totality of the circumstances, *see White,* 496 U.S. at 330, 110 S.Ct. 2412, and is necessarily conducted on a case-by-case basis. *Compare State v. Mendoza,* 75 S.W.3d 842 (Mo.App.

S.D.2002) (reversing the denial of a motion to suppress under circumstances factually similar to the present case); *with State v. Pike,* 162 S.W.3d 464 (Mo. banc 2005) (noting that reasonable suspicion may be based on erratic or unusual driving). Taken in its entirety, the record in this case does not contain evidence sufficient to establish that Barklage was aware of articulable facts that would " 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Given the absence of such facts, the stop at issue does not fall within the exception to the warrant requirement outlined in *Terry,* 392 U.S. at 21, 88 S.Ct. 1868, and the trial court's resolution of the suppression issue must be reversed.

### Conclusion

Given the totality of the circumstances as they existed when Barklage stopped Roark, Barklage did not have a reasonable suspicion, based on articulable facts, that Roark was or had been engaged in criminal activity. We thus discern no basis for the trial court's denial of Roark's motion to suppress. Along with the trial court's denial of Roark's motion to reconsider, that ruling was clearly erroneous, the judgment entered is reversed, and the cause is remanded.

VICTOR C. HOWARD, Chief Judge, and THOMAS H. NEWTON, Judge, concur.