**STATE of Missouri, Plaintiff– Respondent,**

v.

**Justin Peter MASSARO, Defendant– Appellant.**

**No. SD 32102.**

Missouri Court of Appeals, Southern District, Division 1.

March 18, 2013.

Kyle L. Kanable, Springfield, MO, Attorney for Appellant.

J. Daniel Patterson, Greene County Prosecuting Attorney, and Kevin T. Young, Assistant Prosecuting Attorney, Springfield, MO, Attorneys for Respondent.

GARY W. LYNCH, P.J.

Justin Peter Massaro ("Defendant") appeals his misdemeanor convictions of driving while intoxicated, section 577.010,[1] and driving with a suspended license, section 302.321.[2] Defendant contends that the initial traffic stop, which resulted in his arrest, was an improper *Terry*[3] stop because

---

1. All references to section 577.010 are to RSMo 2000.

2. All references to section 302.321 are to RSMo Cum.Supp.2005.

3. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

the information relied upon by the officer effecting the stop was supplied by an anonymous informant and lacked the requisite specific articulable facts to constitute a reasonable suspicion that Defendant was engaged in criminal activity. As such, Defendant argues that all evidence gained from that stop was fruit of the poisonous tree and should have been suppressed. We find the traffic stop valid and affirm.

### *Factual and Procedural Background*

In the early morning hours of June 4, 2010, a security officer at St. John's Hospital ("St. John's") in Springfield called the Springfield Police Department to report a possible drunk driver. A male individual had arrived at the hospital looking for a patient; the security guard suspected that the man was intoxicated because, in addition to "appear[ing] intoxicated," the security guard smelled intoxicants immediately upon making contact with him. Officer Anna Algeo was dispatched to St. John's, but while en route, she was redirected to Cox South Hospital ("Cox South") because security at St. John's had reported that the man had left in his vehicle and was headed to Cox South and still in search of a particular patient. The security guard provided both the make and model of the man's vehicle, as well as its license plate number.

Officer Algeo then proceeded to Cox South, a drive that took between five and ten minutes. She arrived before the described vehicle in question and, while checking the area, observed the vehicle turn into the parking lot. At that point, Officer Algeo stopped the vehicle. Upon making contact with the driver, identified as Defendant, Officer Algeo immediately detected a strong odor of intoxicants and observed that Defendant's "movements were slow and deliberate." When Officer Algeo asked him how much he had drunk, Defendant replied that he "was too intoxicated to drive." Defendant then stated

that his girlfriend was inside Cox South and was "about to die." Officer Algeo advised Defendant that she would allow him to see his girlfriend inside the hospital; however, once they were inside, they were advised by security that the girlfriend's family did not want Defendant to see her. Officer Algeo then asked Defendant to step outside the hospital and submit to field sobriety testing, which was conducted on the sidewalk in front of the hospital. Defendant showed multiple signs of intoxication during each of several tests. Defendant consented to a portable breath test, which supported Officer Algeo's suspicion that Defendant was intoxicated.

Defendant was arrested for driving while intoxicated. While transporting Defendant to the police station, Officer Algeo relayed Defendant's driver's license number to dispatch, who informed her that Defendant's driver's license had been revoked.

Defendant filed a motion to suppress, claiming that the traffic stop leading to Defendant's arrest at Cox South was unlawful and initiated without the reasonable suspicion necessary to justify a *Terry* stop. At the suppression hearing, Officer Algeo testified to the events leading up to the traffic stop in the Cox South parking lot. After taking the matter under advisement, the trial court overruled the motion. At Defendant's bench trial, Officer Algeo was the only witness. Defendant's timely objection to the admission of any evidence acquired by Officer Algeo after he was stopped, on the same basis as alleged in his motion to suppress, was overruled by the trial court. Defendant was found guilty on both counts. On each charge concurrently, he was given a suspended sentence of 180 days in jail and placed on two years' unsupervised probation, which included completing the SATOP program and performing 240 hours of community

service; he was also ordered to pay a $350.00 fine, a $155.00 law-enforcement-recoupment fee, and $10.00 to the Crime Victim's Compensation Fund. This appeal followed.

### Standard of Review

■ We will disturb the ailing of a trial court on a motion to suppress only if that ruling was clearly erroneous. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). In reviewing the record on appeal, we defer to the trial court on issues of fact and credibility. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). Furthermore, we consider all evidence and the reasonable inferences that can be drawn therefrom in the light most favorable to the trial court's ruling. *State v. Clemons*, 946 S.W.2d 206, 218 (Mo. banc 1997). Finally, the issue of whether the facts, as found by the trial court, constituted a violation of the Fourth Amendment is an issue of law that we review *de novo*. *Rousan*, 961 S.W.2d at 845.

### Discussion

■ In his sole point relied on, Defendant contends that Officer Algeo stopped him based upon an uncorroborated anonymous tip, which rendered the stop invalid and should have led to the suppression of all evidence discovered as a result of the stop. We disagree.

■ As our Eastern District explains,

The Fourth Amendment of the United States Constitution protects the people against unreasonable search and seizures. Generally, a search and seizure is allowed only if the police have probable cause to believe the person has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The Fourth Amendment, however, allows a *Terry* stop, which is a minimally intrusive form of seizure that is lawful if the police officer has a reasonable suspicion supported by articulable facts that the individuals stopped are engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is a less demanding standard and can arise from less reliable information than probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Reasonable suspicion is determined by looking at the totality of the circumstances to determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a "reasonable suspicion" of criminal activity. *Id.*

*State v. Berry*, 54 S.W.3d 668, 672–73 (Mo. App.2001). In this context, it is possible for an anonymous tip to "exhibit 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop'" if the police first corroborate specific facts present in the tip, particularly facts predicting future behavior. *Id.* at 673 (quoting *White*, 496 U.S. at 327, 329, 110 S.Ct. 2412). This demonstration of the veracity of certain facts lends credibility to the veracity of the remaining uncorroborated facts, including those intimating criminal activity, as it indicates a familiarity with the individual in question beyond that of a casual observer. *White*, 496 U.S. at 332, 110 S.Ct. 2412.

The question here is whether Officer Algeo corroborated sufficient information from the anonymous[4] tip for it to exhibit

---

4. In its Respondent's Brief, the State contends that the informant in this case—a security guard from St. John's—was not actually anonymous because his identity could be determined at any time by a review of the recorded telephone call and/or a visit to St. John's. We do not address this issue and instead proceed on the assumption, *arguendo*, that the informant was indeed anonymous.

the necessary familiarity and, therefore, reliability. We find that she did.

Defendant contends that Officer Algeo performed "*no* independent corroboration" (emphasis added) of the information in the tip and relies on *State v. Roark*, 229 S.W.3d 216 (Mo.App.2007), in support of that contention. In *Roark*, police received an anonymous tip that a possibly intoxicated driver was traveling toward Sedalia on a particular highway and relayed a description of the vehicle and its license plate number; after police followed the vehicle a short distance without incident, the suspect vehicle exited the highway and pulled into the parking lot of a bar. *Id.* at 217. There, police stopped the driver of the vehicle after he had gone inside. *Id.* On appeal, the Court held that the arresting officer did not have the requisite reasonable suspicion to stop the vehicle because the corroborated facts—that a vehicle with that license plate number was driving east on a certain highway—was not "the sort of confirmation that provides 'reason to believe not only that the caller was honest but also that he was well informed.'" *Id.* at 221 (quoting *White*, 496 U.S. at 332, 110 S.Ct. 2412). In other words, any casual observer could have noted the vehicle's license plate number and direction of travel.

The facts here, however, align more closely with those in *White* and *Berry*. In *White*, an anonymous informant told the police that the defendant would leave a particular apartment at a particular time, described the vehicle she would get into and where she would drive to, and alleged that she would be carrying cocaine inside a brown attache case. 496 U.S. at 327, 110 S.Ct. 2412. Police arrived at the named apartment complex, observed the defendant exit the specified apartment building and enter the described vehicle, and drive toward the named destination, and the police stopped the vehicle just before it reached that destination. *Id.* The Supreme Court upheld the stop as valid, noting the importance of the anonymous tipster's ability to predict the defendant's future behavior. *Id.* at 332, 110 S.Ct. 2412.

In *Berry*, an anonymous informant told the police that the defendant would be leaving Mexico, Missouri, around 10:00 a.m. and traveling to Kansas City to pick up a large amount of cocaine; the informant further told police that the defendant would be returning to Mexico between 3:00 p.m. and 4:00 p.m. and would be driving a white Cadillac with "fancy" wheels and a "temp tag" in the rear window. 54 S.W.3d at 671. An officer drove by the defendant's house at 10:00 a.m. but did not see the specified vehicle; he then positioned himself along the route the defendant was most likely to take in returning from Kansas City. *Id.* Just after 4:00 p.m., the officer observed a vehicle matching the description given by the anonymous informant driving toward Mexico with the defendant driving. *Id.* The officer's subsequent stop of the vehicle was upheld by our Eastern District, who found that the informant's accurate description of the defendant's vehicle and prediction of timing in traveling to and from Kansas City was sufficient corroboration to constitute reasonable suspicion. *Id.* at 674–75.

As in *White* and *Berry*, the information provided by the anonymous informant in this case was sufficiently predictive of Defendant's future behavior and was corroborated by Officer Algeo before the traffic stop. The informant initially told police that a male individual who appeared to be intoxicated had arrived at St. John's looking for a patient; he then informed police that the individual in question had left St. John's and provided police with the make

and model of the vehicle, the vehicle's license plate number, and *where* the individual was going—Cox South. Within no more than ten minutes, Officer Algeo observed the vehicle in question pull into the parking lot at Cox South, thereby corroborating the informant's prediction of Defendant's actions. While any casual observer could have noted the vehicle's make, model, and license plate number in St. John's parking lot, some degree of familiarity with Defendant was necessary to accurately predict his arrival at Cox South within the relevant timeframe. This accurate prediction amounts to sufficient corroboration of all the information provided by the informant, and the totality of that information, in turn, supported Officer Algeo's reasonable suspicion that Defendant was engaged in criminal activity, i.e., driving while intoxicated. *See White*, 496 U.S. at 329, 110 S.Ct. 2412; *Berry*, 54 S.W.3d at 674–75. The investigatory traffic stop was thus valid, and the trial court did not err in denying Defendant's motion to suppress.

### Decision

The trial court's judgment of conviction on both charges is affirmed.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.