**STATE of Missouri, Plaintiff–Respondent,**

v.

**Keith T. JACKSON, Jr., Defendant–Appellant.**

**No. SD 32201.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 26, 2013.

Samuel E. Buffaloe, Columbia, MO, for Appellant.

Evan J. Buchheim, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

A jury found Keith T. Jackson, Jr. ("Defendant") guilty of driving while intoxicated. *See* section 577.010, RSMo 2000.[1] Defendant waived jury sentencing, and the trial court subsequently announced a four-year sentence, suspended its execution, and placed Defendant on a five-year term of probation.

In a single point relied on, Defendant claims the trial court erred in denying his motion to suppress and subsequent trial objection to evidence presented by the arresting officer because the officer lacked reasonable suspicion to believe that criminal activity was afoot at the time he seized Defendant.[2] Specifically, Defendant claims that "although stopping [a vehicle] abruptly at a house and then driving around the block through a private drive [at night] with no headlights [illuminated] might have been suspicious to the officer at first," because the officer "did not know whether [Defendant] continued to drive with no headlights," the officer's "suspicions should ... have been dispelled when [Defendant] left his car ... and walked toward the door of the house where he had previously parked his car."

Because the arresting officer observed Defendant violate state law by driving at night without his headlights illuminated, we affirm the judgment of conviction and sentence.

### Applicable Law and Principles of Review

"At a suppression hearing the [S]tate bears both the burden of producing evidence and the risk of nonpersuasion to

1. All other statutory references are to RSMo Cum.Supp.2012.

2. Defendant does not challenge the sufficiency of the evidence to support his conviction.

show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). "Where, as here, a motion to suppress was overruled and the evidence was introduced at trial, an appellate court will consider the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted." *State v. Goff*, 129 S.W.3d 857, 861–62 (Mo. banc 2004).

■ "[W]e give deference to the trial court's factual findings and credibility determinations and consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Reed*, 400 S.W.3d 509, 511 (Mo.App.S.D. 2013). As a result, we must disregard all evidence and inferences contrary to that ruling. *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo.App.S.D.1990). "Finally, we will affirm the trial court's decision with respect to a motion to suppress evidence 'if it is plausible under any theory.' " *State v. Deaton*, 395 S.W.3d 50, 52 (Mo.App.S.D. 2013) (quoting *State v. McDonald*, 170 S.W.3d 535, 540 (Mo.App.W.D.2005)).

## Relevant Facts and Procedural Background

Around 1:30 a.m. on August 27, 2009, Springfield Police Officer David Snider was on patrol in "a marked police car" when he saw a silver Infiniti turn from Jefferson onto Bennett. Officer Snider was heading south on Jefferson, and the Infiniti was heading north, but both vehicles were "turning in the same direction" onto Bennett. After the Infiniti completed its turn onto Bennett, it "pulled to the curb and stopped very abruptly." Officer Snider saw Defendant "behind the wheel" as he drove by the now-stationary vehicle. Officer Snider looked in his rearview mirror and saw that Defendant's vehicle "had parking lights on only" and that "[t]here were no headlights displayed on the vehicle" as it pulled away from the curb and resumed its progress down Bennett.

The Infiniti traveled to a third street, and Officer Snider "tried to maintain visual contact with the vehicle." Officer Snider "made the block" in time to see Defendant's vehicle turn west on "a private drive" and head back "toward Jefferson." After turning back onto Bennett from Jefferson, Defendant's vehicle "again stopped in front of the same residence[,]" and Officer Snider pulled up behind it. He did not activate his emergency lights because the Infiniti was already stopped, but he decided to "stop" the car "[b]ased on the actions that [he had] seen[,]" including the vehicle traveling "without headlights," stopping "abruptly" in front of a residence, driving back around toward the residence again, and stopping in front of that same residence a second time.

As Officer Snider "pulled in behind" the Infiniti, Defendant exited the driver's side of the vehicle. A passenger also exited the vehicle and walked with Defendant "toward the front of the residence." Officer Snider exited his patrol car and "asked them to come and approach [him]." Officer Snider testified that he could not recall the "exact words" he used in asking Defendant to approach him, but he also recalled that if Defendant had not complied he "would have taken the necessary actions to keep [Defendant] where [Officer Snider] could talk to him[.]"

When the officer described his observations to Defendant, Defendant denied driving the car. Defendant's speech was slurred, and Officer Snider noticed the strong smell "of an alcoholic beverage" on Defendant's breath. After having Defendant perform various field sobriety tests, Officer Snider arrested Defendant for driving while intoxicated.

At the suppression hearing, defense counsel asserted "that [Officer Snider] lacked reasonable suspicion to detain [Defendant] for any sort of investigation of suspected criminal activity, in violation of *Terry v. Ohio*."[3] After the parties rested, the trial court found that

> the officer was doing exactly what a reasonable officer would do and what a community and everyone would expect him to do, and that is that if [he] observe[s] facts occurring, as [he] did in this case, that the officer would make an inquiry to see what, if anything, was afoot.

The trial court denied the motion to suppress, and it later denied Defendant's trial objections to the admission of any evidence concerning what took place after Defendant approached Officer Snider as directed.

Defendant preserved the issue he now asserts on appeal by including it in his motion for new trial, and this appeal timely followed the trial court's denial of that motion and subsequent entry of its judgment of conviction and sentence.

## Analysis

■ Citizens are guaranteed "the right to be free from 'unreasonable searches and seizures'" under the Fourth Amendment to the United States Constitution. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009). "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search[es] and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." *Id.* "A 'seizure' occurs when the totality of the circumstances surrounding the incident indicates that 'a reasonable person would have believed that he was not free to leave.'" *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (quoting *State v. Werner*, 9 S.W.3d 590, 600 (Mo. banc 2000)).

"[S]ubject to only a few specific and well-delineated exceptions, warrantless searches and seizures conducted without probable cause are deemed *per se* unreasonable." *State v. Smith*, 373 S.W.3d 502, 505 (Mo.App.S.D.2012). Presuming, without deciding, that Defendant was seized when he complied with Officer Snider's request to approach and speak with him, Defendant's *Terry* analysis is insufficient to demonstrate reversible error because it overlooks the fact that Officer Snider already had probable cause to seize Defendant based on his observation of Defendant driving his vehicle on a public street at night without its headlights illuminated.

■ "A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment." *Sund*, 215 S.W.3d at 723.[4] The State correctly points us to our opinion in *State v. McIntosh*, 159 S.W.3d 505, 506 (Mo.App.S.D. 2005), where the officer at issue had observed the defendant's vehicle at about 2:30 a.m. and noticed that the headlights went off when "the [vehicle's] right-turn signal was activated[.]" We relied upon sections 307.020(9) and 307.040, which required a vehicle to "display 'lighted lamps' 'at any time from a half-hour after sunset to a half-hour before sunrise,'" in holding that the defendant's "operation of his vehicle, however brief, without headlights at

---

3. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. Driving a vehicle without illuminated headlights when required is an infraction, *see* section 307.040.2, but that infraction still constitutes a violation of state law. *See id.* at 722 n. 3 (an infraction is not a crime, but "it is a violation of state law").

2:30 a.m. justified the stop." *Id.* at 508.[5] The same analysis and result applies.

Defendant argues otherwise, asserting that *State v. Roark*, 229 S.W.3d 216 (Mo. App.W.D.2007), supports his claim that "the stop conducted by Officer Snider cannot be justified based on the fact that he briefly saw the car driving with no headlights, since he had no intention of stopping the car for that reason." In *Roark*, an officer observed a vehicle's passenger-side tires twice cross the fog-line after he had received dispatch information that the driver may have been intoxicated. *Id.* at 217. The movement at issue did not require other drivers to take any "evasive action[,]" and no one was endangered by the conduct. *Id.* at 221. The officer followed the driver at a distance and eventually approached him inside a hotel bar. *Id.* at 217. *Roark* does not help Defendant because it did not address whether a violation of state law would have justified a stop of the vehicle. The concern addressed in *Roark* was only whether an anonymous tip about an alleged intoxicated driver had been adequately corroborated for purposes of creating reasonable suspicion under a *Terry* analysis, *id.* at 222, not whether there was an independent basis— the observation of a state-law violation— that would have provided a lawful basis for the stop.

■■ Further, Officer Snider's observation of Defendant driving without illuminated headlights did not lose its legal significance because he also found Defendant's other behavior to be suspicious. "[A] police officer's 'intent or motive' for making a routine traffic stop is 'unimportant as long as [the officer's] actions were lawful.' " *State v. Mathis*, 204 S.W.3d 247, 258 (Mo.App.E.D.2006) (quoting *State v. Hoyt*, 75 S.W.3d 879, 883 (Mo.App.W.D. 2002)). "So long as the police are doing no more than they are legally permitted

---

**5.** Sections 307.020(9) and 307.040 were amended in 2004 to also address the use of headlights when weather conditions require the use of windshield wipers, but these sections, taken together, still require the same use of headlights one-half hour after sunset and one-half hour before sunrise. Section 307.020(9) provides:

"**W hen lighted lamps are required**" means at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred feet ahead. Lighted lamps shall also be required any time the weather conditions require usage of the motor vehicle's windshield wipers to operate the vehicle in a careful and prudent manner as defined in section 304.012. The provisions of this section shall be interpreted to require lighted lamps during periods of fog even if usage of the windshield wipers is not necessary to operate the vehicle in a careful and prudent manner.

Section 307.040 provides:

1. No person shall drive, move, park or be in custody of any vehicle or combination of vehicles on any street or highway during the times when lighted lamps are required unless such vehicle or combination of vehicles displays lighted lamps and illuminating devices as hereinafter in this chapter required. No person shall use on any vehicle any approved electric lamp or similar device unless the light source of such lamp or device complies with the conditions of approval as to focus and rated candlepower.

2. Notwithstanding the provisions of section 307.120, or any other provision of law, violation of this section shall be deemed an infraction and any person who violates this section as it relates to violations of the usage of lighted lamps required due to weather conditions or fog shall only be fined ten dollars and no court costs shall be assessed.

Defendant attempts in his reply brief to distinguish *McIntosh* on the basis that Defendant was not actually stopped until he had already exited his vehicle. Defendant does not explain why this factual distinction requires a different analysis or result.

and objectively authorized to do, the resulting stop or arrest is constitutional." *State v. Granado,* 148 S.W.3d 309, 311 (Mo. banc 2004). Once the officer had contact with Defendant and observed indications of intoxication, he was then justified in expanding the nature of his stop as "the parameters of a traffic stop investigation can be expanded in the presence of circumstances creating a reasonably articulable suspicion of other criminal activity." *State v. Stoebe,* 406 S.W.3d 509, 521 (Mo.App.W.D.2013).

Defendant admits "that Officer Snider saw the car being driven without headlights[,]" but he argues that "[t]his cannot support the later seizure of [Defendant], though, because Officer Snider did not stop the car when he saw this." Defendant cites no authority for the proposition that an officer must initiate a traffic stop immediately upon observing a traffic violation. And an immediate stop would have been impossible here as Officer Snider still had to circle the block before he could catch up with Defendant's vehicle.

Officer Snider had probable cause to seize Defendant based on his observation of Defendant's state-law violation. As a result, the seizure of Defendant was not unreasonable. Defendant's point fails, and the judgment of conviction and sentence is affirmed.

JEFFREY W. BATES, P.J. and MARY W. SHEFFIELD, J., CONCUR.