STATE of Missouri, Respondent,

v.

Jeremy D. PIKE, Appellant.

No. SC 86083.

Supreme Court of Missouri,
En Banc.

April 26, 2005.

Rehearing Denied May 31, 2005.

466

Bruce B. Brown, Kearney, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Deborah Daniels, Michael J. Spillane, Asst. Attys. Gen., Jefferson City, for respondent.

MICHAEL A. WOLFF, Judge.

Jeremy Pike appeals from his convictions for the class D felony of driving while intoxicated, the class A misdemeanor of driving while revoked, and the class C

misdemeanor of following another vehicle too closely. Pike contends:

1. The provision of section 577.023 [1] that enhances a driving while intoxicated charge from misdemeanor to felony by including prior DWI offenses from courts where the judge is a lawyer—but not including offenses from non-lawyer judge courts—violates equal protection and due process constitutional guarantees;

2. The arresting officer did not have reasonable suspicion to justify stopping Pike's car and, thus, Pike's Fourth Amendment rights were violated;

3. The evidence was insufficient to support the driving while intoxicated conviction; and

4. The evidence was insufficient to support the conviction for following too closely.

Because of the challenge to the validity of statute, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, section 3.

The judgment of the trial court is affirmed.

### Facts and Procedural History

At approximately 2:20 a.m. on August 23, 2003, a Missouri Highway Patrol trooper was stationed, facing east, in a fully marked patrol car, next to 152 Highway in Platte County, Missouri. The double-lane highway was under construction with some of the westbound left lane closed. From behind him, the trooper observed three vehicles traveling east. The trooper was unable at trial to remember the exact speed of the vehicles, but he believed that the vehicles were traveling between 45 and 55 miles per hour. The speed limit was 55 miles per hour. The trooper did not observe the first vehicle use its brakes or slow down drastically when it approached or passed him.

The second vehicle—with Pike driving—was about one car length behind the first vehicle. The third vehicle was about one and one half car lengths behind the second vehicle. The trooper followed the vehicles. At two separate times while following the vehicles, the trooper observed Pike's car cross the fog line by as much as one foot; each time, the car was partially driving on the shoulder.

After straying over the fog line twice, Pike entered the exit ramp for Platte Purchase Drive. The trooper turned on his lights and pursued Pike up the exit ramp, and the car pulled over. The trooper stopped his patrol car and approached Pike's car from the rear. Pike produced a Missouri nondriver identification card. Also in the car were the vehicle's owner and two juveniles.

A video recorder in the patrol vehicle recorded the traffic stop. The trooper asked Pike to get out of the car and Pike complied. Pike appeared to be chewing gum as he walked to the patrol car.

In the patrol car, the trooper observed that Pike's eyes were watery, glassy, red, bloodshot, and "somewhat staring." The trooper smelled a strong odor of alcohol from Pike, and Pike admitted that he had had four beers. Pike's speech was "somewhat slurred and mumbling." Based on these observations, the trooper suspected that Pike was intoxicated.

Pike was asked to perform some field sobriety tests, and he complied. At the trooper's direction, the tests were performed behind the highway patrol car; the tests were not recorded by the patrol car's

---

1. All statutory citations are to RSMo Supp. 2004, unless otherwise noted.

video camera. The trooper testified that he requested the tests be performed behind the highway patrol car, rather than between the two vehicles, because he was the only officer on the scene, there were still three people in the car Pike had been driving, and the patrol vehicle would serve as a barrier between himself and the passengers in the stopped car.

Pike failed all six possible points on the horizontal gaze nystagmus test.[2] The trooper then asked Pike to recite the alphabet from C to W, but Pike recited from G to Z. During the Romberg balance test, Pike failed to estimate when 30 seconds had elapsed within the 4–5 second standard deviation cutoff for passing the test. Pike also failed the one-leg stand test by using his hands to balance, stepping down two times, and swaying. A preliminary breath test administered at the scene was positive for alcohol; results of the preliminary breath test are proper for determining whether there is probable cause for an arrest but are inadmissible as evidence of blood alcohol content. Section 577.021.

The field sobriety tests strengthened the trooper's suspicions that Pike was intoxicated, and Pike was arrested for driving while intoxicated at approximately 2:47 a.m. Pike was placed in the patrol vehicle while the car Pike had been driving was searched. A cooler containing beer was found in the car.

At the Platte County jail, the trooper read Pike the *Miranda*[3] warnings and the "implied consent" warnings. *See* section 577.020.1. Pike agreed to take a breath test to determine his blood alcohol level. Pike said he had had five beers at a party. The test was administered at 4:09 a.m., with a result of .121 percent, which was over the legal limit of .08 percent. The result of the breath test taken at the county jail, if the test was properly administered, is admissible to support a conviction. Section 577.020.

The parties stipulated to the introduction of Pike's driving record showing that his license was revoked at the time of the stop. Pike also stipulated that he had two prior driving while intoxicated convictions, one a municipal conviction from Oakview, Missouri, and one from Platte County.

Pike filed a motion to suppress and a motion to declare section 577.023 unconstitutional. The judge overruled both of these motions after a hearing. During a bench trial in April 2004, Pike renewed his motion to suppress and objected to the introduction of any evidence obtained after the vehicle stop. The objection was overruled, and Pike was found guilty of felony driving while intoxicated, driving while his license was revoked, and following too closely. Pike was found not guilty of possession of alcohol by a minor.

## Discussion[4]

### 1. Constitutionality of section 577.023.1

■■■ Pike argues that section 577.023.1 is unconstitutional in that it vio-

---

2. The horizontal gaze nystagmus test was conducted by moving a pen in front of Pike's face and asking Pike to follow the pen's movement with his eyes. The trooper observed both of Pike's eyes and determined that Pike failed all six possible points on the test, because both eyes showed a lack of smooth pursuit, the onset of nystagmus (showing of white in the eyes) at maximum deviation, and the onset of nystagmus prior to 45 degrees.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Appellate courts review a criminal conviction before a judge in the same way as a conviction by a jury. The evidence and all favorable inferences therefrom are considered in the light most favorable to the state. Appellate review is to determine whether "substantial evidence was adduced to support the

lates the equal protection and due process clauses of the United States and Missouri constitutions. All statutes are presumed to be constitutional; a statute will not be held unconstitutional unless "it clearly and undoubtedly contravenes the constitution." *United C.O.D. v. State*, 150 S.W.3d 311, 313 (Mo. banc 2004). A statute will be enforced unless it "plainly and palpably affronts fundamental law embodied in the constitution." *Id.* Doubts will be resolved in favor of the constitutionality of the statute. *Id.*

**Equal Protection**

■ Pike argues that section 577.023 violates his right to equal protection guaranteed by the United States and Missouri Constitutions.[5] Section 577.023.3 requires a court to enhance a "persistent offender's" driving while intoxicated conviction from a misdemeanor to a felony. A "persistent offender" is defined as someone who has two prior convictions for intoxication-related traffic offenses within ten years of the charged offense. Section 577.023.1(2)(a). To be subject to the enhanced penalty as a persistent offender, each prior offense must have been a "violation of state law or a county or municipal ordinance, *where the judge in such case was an attorney* and the defendant was represented or waived the right to an attorney in writing." Section 577.023.1(1) (Emphasis added). Therefore, only offenders whose prior convictions were heard before a lawyer judge are subject to section 577.023.3's enhancement to a class D felony.

Pike's driving while intoxicated charge was enhanced to a felony based on section 577.023 and Pike's two prior convictions, one for a state law violation and one for a municipal ordinance violation where the

judge was a lawyer. Pike argues that the disparate treatment applied to those with prior convictions before a lawyer judge violates the equal protection clause.

■ The first step in considering an equal protection claim is to determine whether the challenged classification operates against a suspect class or impinges upon a fundamental right. *In re Marriage of Kohring*, 999 S.W.2d 228, 231–32 (Mo. banc 1999). If the statute does not discriminate against a suspect class and does not implicate a fundamental right, then the rational basis test of review will be applied. *Id.* Pike does not claim to belong to a suspect class, nor does one exist. Pike contends that section 577.023 involves a fundamental right. Fundamental rights are those rights that "are 'deeply rooted in this Nation's history and traditions,' and 'implicit in the concept of ordered liberty.' " *In re Marriage of Woodson*, 92 S.W.3d 780, 783 (Mo. banc 2003); *Riche v. Dir. of Revenue*, 987 S.W.2d 331, 336 (Mo. banc 1999).

■ Pike argues that a fundamental right is implicated where an offense is "transformed from a misdemeanor to a felony." However, an enhanced sentence under section 577.023.3 is not a new offense. *See Almendarez–Torres v. U.S.*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Rather, proof of prior convictions under section 577.023 "merely serves to authorize enhanced punishment for the underlying offense charged, if the defendant is found guilty." *State v. Cullen*, 39 S.W.3d 899, 904 (Mo.App.2001). Since section 577.023 creates no new offense, no fundamental right is implicated by the enhancement provision, and the rational basis test applies.

trial court's finding." *State v. Seaman*, 625 S.W.2d 950, 952 (Mo.App.1981).

**5.** U.S. Const. amends. V and XIV; Mo. Const. art. I, sec. 2.

The oft-stated rational basis test requires only that the challenged law bear some rational relationship to a legitimate state interest. To prevail under the rational basis test, Pike must show that the classification has no reasonable basis and is purely arbitrary. *Miss Kitty's Saloon, Inc. v. Missouri Dep't of Revenue*, 41 S.W.3d 466, 467 (Mo. banc 2001). Under rational basis review, this Court will not substitute its judgment for that of the legislature as to the wisdom, social desirability or economic policy underlying a statute. *Kohring*, 999 S.W.2d at 233.

This Court has previously acknowledged that section 577.023 promotes the State's interest in "deter[ring] persons who have previously been convicted of driving while intoxicated from repeating their unlawful acts and to severely punish those who ignore the deterrent message." *A.B. v. Frank*, 657 S.W.2d 625, 628 (Mo. banc 1983).

Pike argues that the provision relating to lawyer judges bears no rational relationship to this deterrence goal. He argues that this provision creates a "happenstance" classification, citing *State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975).

A statute may have more than one purpose. The challenged statutory provision clearly indicates the legislature's belief that a defendant subject to an enhanced driving while intoxicated charge deserves the protection of a judge fully trained in the law. This is not merely a "happenstance" classification, because it provides additional protection to defendants. Section 577.023's classification relates to a legitimate state interest and is constitutional under the rational basis test.

**Due Process**

The United States and Missouri Constitutions require that due process of law be provided before an individual may be deprived of life or liberty.[6] Pike argues that the enhancement provision of section 577.023 violates his right to substantive due process.

Pike argues that municipal convictions are generally civil matters and should not be treated as criminal convictions for enhancement purposes. This is true, Pike argues, because of the increased procedural protections available in state convictions compared to municipal convictions and because of the different penalties that may be imposed upon conviction. He argues that because most municipal convictions either do not authorize incarceration or carry a maximum penalty of a much shorter incarceration, it violates his due process rights to later consider his municipal conviction in the same way as his state conviction.

Incarceration was not authorized as a punishment when Pike pled guilty in the municipal proceeding. Therefore, Pike argues, he had an increased incentive to plead guilty rather than risk prosecution, and possible incarceration, by the state.

Pike's contention is controlled by *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), where the defendant objected to the enhancement of his federal drug conviction based, in part, on an uncounseled municipal driving while intoxicated conviction. The Court first cited *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), where it was determined that a defendant did not have the constitutional right to counsel in a misdemeanor case, unless incarceration was actually imposed as a sentence. *Id.* at 743, 114 S.Ct. 1921. Under *Scott*, Nichols' municipal DWI conviction was constitutional, because Nichols was not sentenced to prison. *Id.* The Court upheld enhance-

---

6. U.S. Const., amends. V and XIV; Mo. Const. art. I, sec. 10.

ment of Nichols' sentence, based partly on the prior municipal conviction. The Supreme Court recognized that an otherwise constitutional conviction, whether municipal or state, may properly be used to enhance a later conviction. *Id.* at 747, 114 S.Ct. 1921.

Pike does not allege that his original municipal conviction was unconstitutional, nor is there any evidence to support this proposition. Rather, he asserts that the use of his municipal conviction to enhance his later sentence was unconstitutional. Under *Nichols*, however, section 577.023 does not violate a defendant's due process rights by allowing a penalty enhancement based on a prior constitutional municipal conviction.

## 2. *Reasonable Suspicion Justifying Stop of Pike's Vehicle*

■ Pike argues that the trooper's stop of his vehicle violated his Fourth Amendment right to be free from unreasonable search and seizure; therefore, he argues, all evidence obtained during and after the traffic stop should be suppressed.

■ The state argues that Pike did not properly preserve this issue for appeal because he objected only to the overruling of his motion to suppress and not to the admission of the underlying evidence at trial. At trial, Pike again requested that his motion to suppress be granted and asked for and received a continuing objection to all evidence presented relating to events after the stop of Pike's vehicle. This objection was sufficient to preserve this issue for appeal.

■ At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999); *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). When

reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. *Deck*, 994 S.W.2d at 534; *State v. Baskerville*, 616 S.W.2d 839, 843 (Mo.1981).

The Fourth Amendment of the United States Constitution guarantees citizens the right to be free from "unreasonable searches and seizures." The Missouri constitution offers the same level of protection; the same analysis applies to cases under the Missouri Constitution as under the United States Constitution. *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996).

■ Stopping Pike's car was a "seizure" for purposes of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). As a general rule, warrantless seizures are unreasonable and, thus, unconstitutional. *State v. Miller*, 894 S.W.2d 649, 651 (Mo. banc 1995). An exception to this rule was recognized in *Terry v. Ohio*, where the Supreme Court held that a brief investigative stop may be conducted where an officer has a "reasonable suspicion" based on "specific and articulable facts" that illegal activity has occurred or is occurring. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999).

■ The existence of reasonable suspicion is determined objectively: "would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief that the action taken was appropriate?'" *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868. The reasonableness of an officer's action is determined by balancing the interest to be served against the privacy

interest affected by the seizure. *Id.* at 21, 88 S.Ct. 1868.

*Terry's* reasonable suspicion standard applies to traffic stops. *Deck*, 994 S.W.2d at 534; *Miller*, 894 S.W.2d at 651. Reasonable suspicion—and therefore a traffic stop—may be based on the officer's observation of a traffic violation. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004); *State v. England*, 92 S.W.3d 335, 339 (Mo.App.2002). A traffic violation, however, is not required to create reasonable suspicion to justify a stop; justification may be based on erratic or unusual operation. *See Deck*, 994 S.W.2d at 535; *State v. Bunts*, 867 S.W.2d 277, 280 (Mo.App.1993).

Reasonable suspicion is a less stringent standard than probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Reasonable suspicion may be established with information that is different in amount or content, or that is less reliable, than the evidence required to establish probable cause. *Id.* The quantity and quality of the information must be considered in the "totality of the circumstances" to determine whether reasonable suspicion exists. *Id.*

Considered in the light most favorable to the state, the evidence presented at the suppression hearing and at trial supported the trooper's reasonable suspicion that unlawful activity had occurred. Pike was one of relatively few drivers on the road at 2:20 in the morning. The trooper observed Pike following another vehicle at a distance of approximately one car length or so, which the trooper testified was not an adequate distance when considering the speed of the vehicles. The trooper observed Pike's vehicle travel over the fog line dividing the travel lane from the shoulder on two occasions. Even though this did not constitute "erratic" driving in the trooper's opinion, there was no evidence of any obstruction or other circumstance that would necessitate driving on the shoulder and no evidence that either of the other two vehicles went onto the shoulder. These facts, considered in light of the trooper's experience as a highway patrol officer, provided a reasonable suspicion that a traffic violation had occurred and justified the stop of Pike's vehicle. In fact, the trial court found that the evidence proved beyond a reasonable doubt that traffic violations had been committed. When considering the facts and inferences therefrom in the light most favorable to the trial court's judgment, it is clear that the trooper could point to specific facts— the distance between the vehicles and the transgressions over the fog line—that provided a reasonable suspicion that Pike had committed at least one traffic violation. The stop was constitutionally permissible.

### 3. Sufficiency of the Evidence—Driving While Intoxicated

Pike argues that the trial court erred in overruling his motion for acquittal on the issue of driving while intoxicated. Pike contends that there was insufficient evidence to find him guilty of this charge, because the trooper's testimony was contradictory, inconsistent, vague, and speculative; because the evidence that he was intoxicated was invalid or unreliable; and because the breath test was not properly admitted.

When the sufficiency of the evidence is challenged in a criminal case, this Court's review is limited to whether there is sufficient evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). The evidence, including all reasonable inferences therefrom, is considered in the light most favorable to the

judgment, disregarding all contrary inferences. *Id.*

■■■■ Pike first argues that the field sobriety tests should not be considered as evidence because they were administered behind the patrol car, so that they were not recorded by the video camera. Although section 577.020.7 does not require that field sobriety tests be videotaped, Pike argues that the trooper's decision to administer the tests where they could not be videotaped evidences a "prima facie case of bad faith" and, therefore, creates an adverse inference against the test results pursuant to the spoliation doctrine.[7] The trooper testified that he was the only officer on the scene when he began the sobriety testing and that he conducted the tests behind his vehicle because three individuals remained in the other vehicle and he wanted his patrol car to serve as a barrier between himself and those unrestrained individuals.

Even assuming that the spoliation doctrine would apply where the desired evidence was not destroyed, but rather was never created at all, the trooper's decision does not show bad faith. Legitimate reasons for the trooper's decision to conduct the testing behind his patrol car were presented. The fact that none of the occupants in the car had given him a particular reason to fear them does not mean that the trooper was required to assume that there was no weapon or other means by which they could have harmed him. The decision to conduct the testing behind the patrol car was reasonable under the circumstances.

Pike also argues that his appearance, driving style, admissions, breath, and slurred speech may have provided a rea-sonable suspicion of driving while intoxicated, but this evidence was insufficient to support his conviction beyond a reasonable doubt. Pike is correct that each of these items, taken individually, would provide slim support for his conviction. However, taken cumulatively, and combined with his performance on the field sobriety and breath tests, this evidence is sufficient to find Pike guilty of driving while intoxicated.

Pike points out that the trooper initially testified that the shoulder on which Pike performed the field sobriety tests was paved; but, upon being shown pictures of the scene during cross-examination, the trooper admitted that the shoulder was gravel. Pike argues that this shows that the trooper was not reliable as a witness and that he may not have performed the sobriety tests correctly. However, there is no evidence that the incorrect recollection about the condition of the shoulder had any effect on the administration of the tests or on the testimony as a whole. Such issues of credibility are for the trial court, and the trial court here chose to believe the trooper's testimony that he properly administered the field sobriety tests.

■■■ Pike argues that the breath test was not properly conducted; therefore, the results were not admissible. A *prima facie* case for the admission of the results of the breath test administered at the county jail is established where the state demonstrates that the test was performed according to Department of Health regulations by an operator with a proper permit using equipment that was properly maintained and approved. Section 577.020;

---

7.  The spoilation doctrine creates an inference of bad faith on the part of the state when evidence is destroyed or altered. Simple negligence is not enough to invoke the adverse inference rule; the destruction must be intentional. *Baldridge v. Dir. of Revenue,* 82 S.W.3d 212, 222–23 (Mo.App.2002).

*Reckner v. Fischer,* 121 S.W.3d 296, 301 (Mo.App.2003). Pike does not dispute that the trooper was permitted to conduct the test or that the equipment used was proper. Pike contends that the test was not performed according to the regulations and procedures because Pike appeared to be chewing gum at the time of the traffic stop and the trooper could not specifically remember asking Pike whether he had something in his mouth prior to administering the test.

The applicable regulation, 19 CSR 25–30.060, requires that, immediately prior to administering a breath test, the officer observe the subject for fifteen minutes and ensure that there is "no smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period."

The trooper testified that he observed Pike for the 15 minute period and that Pike did not smoke, vomit, or take anything into his mouth during this period.

Pike does not assert that he began chewing gum during the observation period, or even that he was chewing gum during the observation period. Rather, he asserts that he was chewing gum approximately one and a half-hours before the test, when the trooper stopped him. Although the trooper did not observe Pike spitting the gum out, he also did not state that he observed Pike chewing it during the observation period. The evidence was sufficient to support a reasonable inference from the trooper's testimony that he observed Pike for the 15 minute period and that Pike no longer had anything visibly in his mouth. The trial court was entitled to draw that inference, and this Court defers to its conclusion.

Although it appears from the plain language of the regulation that the trooper did not violate the regulation, Pike relies on *Carr v. Director of Revenue,* 95 S.W.3d 121 (Mo.App.2002), to argue that the proper procedures were not followed. In *Carr,* the officer testified that he followed the proper observation procedures prior to the test. *Id.* at 122. Carr, on the other hand, testified that he was allowed to smoke a cigarette, use the restroom, and place a butterscotch candy into his mouth during the 15 minute observation period. *Id.* The trial court apparently believed Carr, because it held that he had properly rebutted the State's *prima facie* case that the test was admissible, and the court of appeals affirmed. *Id.* at 126.

*Carr* is distinguishable from this case. The *Carr* defendant produced specific evidence to rebut the director of revenue's *prima facie* case that the test results were valid. Here, Pike produced no evidence, other than the trooper's admissions that Pike appeared to be chewing gum at the time of the stop and that the trooper did not specifically remember checking Pike's mouth for a foreign object. Moreover, the testimony in *Carr,* if believed, would have proven that the regulation was not followed: it would have proven the actual oral intake of a piece of candy during the observation period. In contrast, even if Pike was chewing gum before the observation period, this is not specifically prohibited by the regulation.

The result of the breath test at the Platte County jail was properly admitted and supports the conviction.

### 4. Sufficiency of the Evidence—Following Too Closely

Pike challenges the sufficiency of the evidence underlying his conviction for following too closely. When the sufficiency of the evidence is challenged in a criminal case, appellate review is limited to whether there is sufficient evidence from which a reasonable trier of fact could have

found the defendant guilty beyond a reasonable doubt. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). An appellate court considers the evidence, including all reasonable inferences therefrom, in the light most favorable to the judgment and disregards all contrary inferences. *Id.*

The trial court found Pike guilty of violating section 304.017, RSMo 2000, which states: "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway."

The trooper testified that he did not observe any slowing of the first vehicle as it passed him. Although he acknowledged that the vehicle could have gradually slowed down in response to his presence, he did not observe a drastic reduction in speed. He estimated that Pike was following about one car length behind the first vehicle. The incident occurred early in the morning, when it was dark, and when one lane of the road was closed due to construction. The trooper believed that the vehicles were traveling between 45 and 55 miles per hour when they passed him.

This evidence, viewed in the light most favorable to the judgment, was sufficient to sustain Pike's conviction. As a Highway Patrol officer, the trooper was accustomed to observing traffic. He believed that Pike's vehicle was too close to the vehicle in front, when considering the speed of the vehicles and the road conditions. The evidence supports this belief.

**Conclusion**

Section 577.023 does not violate the constitution. The trial court properly admitted evidence of Pike's intoxication and the evidence was sufficient to support the conviction. The evidence also supports the conviction for following too closely.

The judgment is affirmed.

All concur.