

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ANTONIO M. MORRISON, | ) | |
| | ) | |
| Appellant, | ) | **WD83887** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **March 30, 2021** |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable Patrick K. Robb, Judge**

**Before Division Four:** Cynthia L. Martin, Chief Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

Mr. Antonio M. Morrison ("Morrison") appeals from the judgment of the Circuit Court of

Buchanan County, Missouri ("motion court"), denying, without an evidentiary hearing, his

Rule 29.15 amended motion for post-conviction relief, based on ineffective assistance of appellate

counsel. We affirm.

## Factual and Procedural Background[1]

On November 26, 2015, at approximately 3:45 a.m., a St. Joseph, Missouri police officer

received a call over dispatch advising him of a white-colored vehicle in the parking lot of the

---

[1] On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment. *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018).

Hampton Inn hotel in St. Joseph engaged in suspicious activity.[2] A white-colored car was lingering in the parking lot and switching parking stalls, though no one exited the car (*i.e.*, to enter a guest room as a hotel customer or guest of a hotel customer). This continued for over twenty minutes.

Shortly after the officer arrived and patrolled the hotel parking lot area, the officer observed a vehicle matching the dispatch description (*i.e.*, white Toyota Solara). Indeed, the white Toyota's engine was running and no one exited the vehicle, though the vehicle was parked in a hotel parking stall. Instead, as the officer's vehicle became visible to the occupants of the white Toyota, the vehicle began backing out of the parking stall and proceeded to exit the hotel parking lot. The white Toyota drove directly in front of the officer's patrol vehicle, and the driver looked straight ahead so as to avoid eye contact with the officer. However, because the officer's headlights were illuminated and the parking lot was well lit, the officer was able to clearly see the driver, later identified as Morrison. Based upon the totality of the circumstances, the officer decided to initiate a *Terry* stop[3] of the white Toyota.

As the white Toyota left the hotel parking lot, the officer followed the vehicle and activated the emergency lights on his squad car in an effort to stop the white Toyota. Instead of stopping, the white Toyota fled, prompting the officer to activate his siren. Again, the white Toyota refused to stop and instead turned onto the nearest highway. The officer estimated the white Toyota's speed to be 100 miles per hour, prompting the officer to discontinue his pursuit per department policy to prevent unreasonable harm to the community.

Although the officer discontinued his pursuit, he was able to observe the white Toyota swerve across lanes and speed between traffic. Soon after the officer discontinued his pursuit, he

_____

[2] Many of the underlying facts are taken directly from the memorandum of law issued to Morrison in his direct appeal, *State v. Morrison*, 581 S.W.3d 161 (Mo. App. W.D. 2019), without further attribution.
[3] *See Terry v. Ohio*, 392 U.S. 1, 30 (1968).

received a report that the white Toyota was involved in an accident. When the officer and other law enforcement officers arrived at the scene, Morrison had already fled on foot. Morrison was apprehended near the scene of the crash approximately one hour later.

Morrison was charged in the Circuit Court of Buchanan County with one count of felony resisting arrest in violation of section 575.150.1(1).[4] Following a bench trial, Morrison was convicted of resisting arrest and sentenced to two years in the Department of Corrections. Morrison appealed his conviction, alleging that there was insufficient evidence to prove that he had driven at a speed of 100 miles per hour so as to create a substantial risk of serious physical injury or death. This Court, in an unpublished per curiam order, affirmed his conviction. *State v. Morrison*, 581 S.W.3d 161 (Mo. App. W.D. 2019).

Thereafter, Morrison filed a Rule 29.15 motion for post-conviction relief in which he claimed that his appellate counsel on direct appeal provided constitutionally ineffective assistance of counsel. The motion court denied his claim for post-conviction relief without an evidentiary hearing. Morrison now appeals.

### Standard of Review

"Appellate review of the [motion] court's action on the motion filed under . . . Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation marks omitted). "Our

---

[4] Unless otherwise indicated, statutory citations refer to the 2000 edition of the REVISED STATUTES OF MISSOURI, updated through the 2015 supplement, which is the version of the statute that was in effect at the time of Morrison's commission of the crime and, hence, the version of the statute we apply to our review of Morrison's appeal. *See State v. Hagan*, 79 S.W.3d 447, 452 (Mo. App. S.D. 2002); *State v. Cruz-Basurto*, 581 S.W.3d 51, 60 (Mo. App. W.D. 2019). We note that the legislature made additional (and unrelated) amendments to section 575.150 in 2014, but those amendments did not take effect until January 1, 2017.

review of a claim of ineffective assistance of appellate counsel is governed by the same standard as that employed regarding claims concerning ineffective assistance of trial counsel." *Sykes v. State*, 372 S.W.3d 33, 40 (Mo. App. W.D. 2012). Regardless of the motion court's findings and conclusions in denying the motion, we will affirm the motion court's decision if sustainable for any reason. *Dorsey v. State*, 448 S.W.3d 276, 282 (Mo. banc 2014).

**Analysis**

Morrison asserts one point on appeal. He contends in his appellate briefing to this Court that the motion court erred in denying his post-conviction relief motion without an evidentiary hearing because appellate counsel was ineffective for failing to raise in his direct appeal the claim that there was insufficient evidence that the officer was attempting to stop his vehicle for committing any "crime, infraction, or ordinance violation."

An evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(h). "As distinguished from other civil pleadings, courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000) (citing *White v. State*, 939 S.W.2d 887, 893 (Mo. banc 1997)). Because his claim for post-conviction relief alleged ineffective assistance of counsel, Morrison was entitled to an evidentiary hearing only if his motion "allege[d] facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that [he] was thereby prejudiced." *Id.* at 823.

"To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Anderson v. State*, 564 S.W.3d 592, 617

4

(Mo. banc 2018) (internal quotation marks omitted). "There is no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." *Id.* (internal quotation marks omitted). Morrison must overcome the strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Morrison must also show that "if counsel had raised the claims, there is a reasonable probability the outcome of the appeal would have been different." *Anderson*, 564 S.W.3d at 617 (internal quotation marks omitted).

Morrison was convicted of resisting arrest under section 575.150 which provides that:

1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; . . .

2. This section applies to:

> (1) Arrests, stops, or detentions, with or without warrants;
> (2) Arrests, stops, or detentions, for any crime, infraction, or ordinance violation; and
> (3) Arrests for warrants issued by a court or a probation and parole officer.

The State is required to prove the following elements to support a conviction for resisting a lawful stop under section 575.150.1(1): "(1) defendant knew or reasonably should have known that a law enforcement officer was making a lawful stop; (2) defendant resisted that stop by fleeing from the officer, or by threatening to use violence or physical force; and (3) defendant did so for

5

the purpose of preventing the officer from completing the stop." *State v. Nelson*, 505 S.W.3d 437, 445 (Mo. App. W.D. 2016) (citing *State v. Jones*, 479 S.W.3d 100, 109 (Mo. banc 2016)).

The flaw in Morrison's argument is that he focuses on sub-section 575.150.2(2) and attempts to create a fourth element—that the reason for the officer's attempted stop must be "for any crime, infraction, or ordinance violation." However, as we have stated before, "[t]he specific reason for the stop is neither an element of the offense, nor a method of committing this offense. The method of committing the offense is by fleeing, or by threatening to use violence or physical force." *Nelson*, 505 S.W.3d at 445.[5]

More importantly, Morrison ignores sub-section 575.150.2(1), which contemplates that the resisting arrest statute "applies to . . . stops, or detentions, with or without warrants." Clearly, then, the statute applies to the type of stops or detentions contemplated by *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The "reasonable suspicion" standard contemplated in a *Terry* stop is a less stringent standard than "probable cause." *State v. Pike*, 162 S.W.3d 464, 473 (Mo. banc 2005). Thus, the State may establish that the police officer had reasonable suspicion even though the officer had information that was less reliable than the evidence that would be required to establish probable cause. *Id.* "The [reasonable suspicion] that will justify the minimally intrusive *Terry* stop is present when a police officer observes *unusual conduct* which leads him reasonably to conclude *in light of his experience* that criminal activity may be afoot." *State v. Waldrup*, 331 S.W.3d 668, 673 (Mo. banc 2011) (internal quotation marks omitted).

---

[5] Morrison refers us to *State v. Redifer*, 215 S.W.3d 725 (Mo. App. W.D. 2006), a case that interpreted a *prior* version of section 575.150. At that time, sub-section 575.150.2 was written as one sentence, and we concluded that the phrase "for any crime, infraction or ordinance violation" was applicable to any arrest, stop or detention. *Id.* at 732. However, in response to *Redifer*, the legislature amended sub-section 575.150.2 to include three distinct categories, eliminating the distorting effect of meshing separate categories into one sentence. In the version of the resisting arrest statute applicable at the time of Morrison's arrest, section 575.150.2(1) did *not* include the "crime, infraction, or ordinance violation" descriptive language. Accordingly, Morrison's reliance upon *Redifer* is misplaced.

6

While no exact formula exists defining reasonable suspicion, it is clear that the Fourth Amendment requires only "some minimal level of objective justification" for a *Terry* stop. *Immigr. & Naturalization Serv. v. Delgado*, 466 U.S. 210, 217 (1984); *see also State v. Williams*, 334 S.W.3d 177, 182 (Mo. App. W.D. 2011). Furthermore, the facts and inferences on which the officer acts need not exclude every possible interpretation other than criminal activity. *State v. Lanear*, 805 S.W.2d 713, 716 (Mo. App. W.D. 1991); *see also State v. Pike*, 162 S.W.3d at 473 (stating traffic violation not required to create reasonable suspicion to justify a *Terry* stop); *State v. Crabtree*, 398 S.W.3d 57, 60 (Mo. App. W.D. 2013) (holding that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion to justify a *Terry* stop); *State v. Kelly*, 119 S.W.3d 587, 595 (Mo. App. E.D. 2003) (explaining that even where conduct justifying a *Terry* stop is ambiguous and reasonably susceptible of innocent explanation, if it also suggests criminal activity may be afoot, then detention to resolve the ambiguity does not violate the Fourth Amendment).

In the instant appeal, Morrison does not even mention *Terry v. Ohio*, nor does he discuss or argue that the officer's actions are violative of the "reasonable suspicion" standard for initiating a *Terry* stop.

Hence, the record reflects that Morrison has failed to challenge that: (1) he knew or reasonably should have known that a law enforcement officer was attempting to make a lawful *Terry* stop; (2) he resisted that attempted *Terry* stop by fleeing; and (3) he did so for the purpose of preventing the officer from completing the stop. Simply put, the claim Morrison asserts appellate counsel should have asserted on his direct appeal would have been futile. And, we will not convict appellate counsel of ineffective assistance for failing to raise a claim that would have been futile. *See Vogel v. State*, 31 S.W.3d 130, 146 (Mo. App. W.D. 2000).

7

The motion court's ruling denying Morrison's motion for post-conviction relief without an evidentiary hearing was not clearly erroneous.[6]

### Conclusion

Because we have concluded that the motion court's post-conviction relief ruling is not clearly erroneous, we affirm.

/s/ *Mark D. Pfeiffer*
_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Chief Judge, and Thomas H. Newton, Judge, concur.

---

[6] Having concluded that Morrison failed to make the required showing of constitutionally deficient performance of appellate counsel, we need not consider the *Strickland* prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 700 (1984).