

# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | **WD85767** |
| Respondent, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| JASON SCOTT KLEIN, | ) | **November 28, 2023** |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri
The Honorable Keith Michael Bail, Judge**

**Before Division Two:  Mark D. Pfeiffer, Presiding Judge,
Alok Ahuja, Judge, and Thomas N. Chapman, Judge**

Following a bench trial in the Circuit Court of Pettis County, Jason Klein was

convicted of possession of a controlled substance and resisting arrest.  Klein raises two

points on appeal.  Klein contends that the trial court erred in overruling his motion to

suppress and admitting physical evidence at trial.  Klein also argues that the evidence was

insufficient to establish that the substance recovered from his person was

methamphetamine.  The judgment is affirmed.

## Background[1]

On the night of March 14, 2020, D.S., a deputy with the Pettis County Sheriff's Office, was conducting traffic enforcement. D.S. conducted a traffic stop of a truck with an inoperable headlight. D.S. also discovered that the license plate displayed on the truck was registered to a different vehicle. D.S. made contact with the driver of the truck. Klein was the driver of the truck. A passenger was also in the truck.

D.S. discussed with Klein the headlight violation and the license plates that were registered to a different vehicle. During his interaction with Klein, D.S. observed that the pupil of Klein's left eye was extremely constricted. D.S. noted that the pupil would typically be dilated to gather as much light as possible to improve vision at night. D.S. also observed that Klein was sweating profusely and that the artery in Klein's neck was pulsating very rapidly and very strongly. D.S. testified that these observations led D.S. to believe that Klein was possibly under the influence of a controlled substance.

At some point during the conversation, Klein requested to exit the vehicle to turn off the heat of the truck, which he would have to do underneath the hood of the truck due

---

[1] In criminal cases, we view the evidence in the light most favorable to the verdict and disregard contrary evidence and inferences. *State v. Hendricks*, 619 S.W.3d 171, 173 n.1 (Mo. App. W.D. 2021). With regard to the evidence underlying Klein's point on appeal regarding the trial court's denial of his motion to suppress, we view the evidence at the suppression hearing as well as the evidence at trial. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). Such evidence is viewed in the light most favorable to the trial court's ruling on the motion to suppress. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

to an issue with the truck. D.S. allowed Klein to exit the vehicle and disengage the heat under the hood.

D.S. requested to conduct a search of Klein's person.[2] Klein consented. D.S. began the search by conducting a patdown over the exterior of Klein to determine whether Klein had weapons before continuing a further search. While D.S. was conducting the patdown of Klein, D.S. located what felt to D.S. to be a bag of methamphetamine. D.S. could tell that the bag contained a crystalline substance that he believed to be methamphetamine based on the feel of the item, the audible crunch when D.S. contacted it, as well as his previous experience. D.S. testified that he would be able to distinguish between the feel of methamphetamine and other crystal substances such as sugar, based on the size of the crystals and his experience. As D.S. made contact with the item and asked Klein what it was, Klein began to pull away. D.S. then sought to detain Klein. Klein struggled against D.S.'s efforts. D.S. was able to pin Klein against his vehicle and secure him in handcuffs. D.S. then sought to retrieve the item from Klein's pocket, at which point Klein began resisting D.S. D.S. then placed Klein on the ground in an attempt to secure him from resisting further. Shortly thereafter, other officers began to arrive on the scene. D.S. retrieved a large plastic bag of a white crystal substance

---

[2] At the suppression hearing, D.S. testified that Klein consented to a search of his person. On cross-examination, defense counsel specifically asked whether the consent was for a search or a patdown; D.S. testified that Klein had consented to a search. At trial, D.S. testified that Klein consented to a patdown search. In reviewing the denial of a motion to suppress, we view the evidence at the suppression hearing and at trial in the light most favorable to the trial court's ruling. *Pike*, 162 S.W.3d at 472; *Oliver*, 293 S.W.3d at 442.

3

consistent with methamphetamine from Klein's pocket. A further search of Klein revealed another bag of a white crystal substance consistent with methamphetamine, as well as a used needle that stuck D.S. in the hand. Klein was transported to the Pettis County Jail. D.S. was transported to a health center to seek treatment for the needle puncture. An inventory search of Klein's vehicle was conducted by J.M., a deputy with the Pettis County Sheriff's Office. The inventory search revealed a digital scale, other Missouri license plates, and a large number of keys.

The two bags of crystalline substances were submitted to the Missouri State Highway Patrol Crime Laboratory for testing. Both bags tested positive for methamphetamine.

Klein was charged by amended information[3] with one count of possession of a controlled substance (methamphetamine) in violation of section 579.015[4] and one count of resisting arrest in violation of section 575.150.

Klein filed a pretrial motion to suppress, arguing that the discovery of methamphetamine was the product of an unconstitutional search. A suppression hearing was held on January 15, 2021, during which D.S. and J.M. testified for the State and one witness testified for the defense. The trial court subsequently denied Klein's motion to suppress.

---

[3] Klein had originally been charged with one count of trafficking drugs in the second degree and one count of resisting arrest prior to the filing of the amended information.

[4] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2018 cumulative supplement.

On August 11, 2022, a bench trial was held after Klein waived his right to a jury trial.  Following trial, Klein was found guilty of possession of a controlled substance and resisting arrest.

Klein appeals.

## Analysis

Klein raises two points on appeal.  In his first point, he argues that the trial court clearly erred in denying his motion to suppress evidence and in admitting physical evidence at trial.  In his second point, he argues that there was insufficient evidence that the substance recovered from his person was methamphetamine.  We address these points in turn.

## Point One

In his first point on appeal, Klein argues that the trial court clearly erred in denying his motion to suppress evidence and in admitting physical evidence at trial. Klein argues that D.S. exceeded the scope of *Terry v. Ohio*[5] by attempting to reach into Klein's pocket when Klein had only consented to a patdown.

"A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007).  "The trial court's ruling will be deemed clearly erroneous if, after review of the entire record, this Court is left with the definite and firm impression that a mistake has been made." *State v.*

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). "When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). "This Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Lammers*, 479 S.W.3d at 630. "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*." *Sund*, 215 S.W.3d at 723.

Klein filed a pretrial motion to suppress that argued that the search and seizure of the bags of methamphetamine were in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The trial court denied his motion to suppress. On appeal, Klein argues that D.S. exceeded the scope of a protective search under *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

"The Fourth Amendment, made applicable to the States by way of the Fourteenth Amendment, guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (internal citation omitted) (quoting U.S. Const. amend. IV). Subject to certain exceptions, warrantless searches and seizures are unreasonable. *Id.* (citations omitted). "One such exception was recognized in *Terry v. Ohio* . . . which held that 'where a police officer observes unusual conduct which leads

6

him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ,' the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Id.* at 372-73 (quoting *Terry*, 392 U.S. at 30).

"*Terry* further held that '[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.'" *Id.* at 373 (quoting *Terry*, 392 U.S. at 24). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). This type of "protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* (quoting *Terry*, 392 U.S. at 26). If the protective search authorized by *Terry* exceeds what is necessary to determine whether the suspect is armed, it is not a valid search under *Terry*. *Id.*

However, with respect to contraband discovered during a protective search authorized by *Terry*, *Dickerson* recognized what has become commonly known as the "plain feel" exception to the warrant requirement:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already

7

> authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Dickerson*, 508 U.S. at 375-76. *See also State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996) (citing *Dickerson*, 508 U.S. at 375-76). In *Dickerson*, a search was held to be unlawful because, during the protective search, the officer squeezed, slid, and otherwise manipulated a lump in a suspect's pocket despite having already concluded that the pocket did not contain a weapon such that the search exceeded the scope of what *Terry* authorized. *Dickerson*, 508 U.S. at 378-79.

But, a protective search authorized by *Terry* is not the only exception by which a law enforcement officer may conduct a warrantless search. "Where consent is lawfully obtained, law enforcement officers may conduct a search commensurate in scope with the permission given." *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992). "This is so even though the search was not otherwise supported by probable cause or reasonable suspicion of criminal activity." *Id.* A further exception "to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). This search incident to arrest includes "the arrestee's person and the area 'within his immediate control' [which has been construed] to mean the area from within which he might gain possession of a weapon or destructible evidence.'" *Id.* at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)); *State v. Waldrup*, 331 S.W.3d 668, 676 (Mo. 2011).

In this matter, Klein's reliance on the limitations placed upon a protective search authorized by *Terry* is misplaced. There was evidence at the suppression hearing that Klein consented to a search of his person, such that the search conducted by D.S. was not a protective search authorized by *Terry* and therefore would not have been limited to a patdown search that was further limited to that which was necessary to discover weapons.

In viewing the evidence of the suppression hearing and trial in the light most favorable to the trial court's ruling, the evidence was that D.S. briefly investigated Klein after a lawful traffic stop;[6] that Klein consented to a search of his person; that D.S. began the search with a patdown of Klein; that, during the patdown, D.S. identified a bag of crystal substance in Klein's pocket as methamphetamine based on the feel of the object, his observations of Klein, and D.S.'s training and experience; that D.S. then placed Klein under arrest; and that D.S. then conducted a search incident to arrest and seized two bags of crystalline substances believed to be methamphetamine from Klein's pockets. On this set of facts, the trial court could properly conclude that the bags of methamphetamine seized from Klein were not the product of an unreasonable search or seizure.[7]

---

[6] In this matter, Klein does not raise any points on appeal that the initial traffic stop was unlawful. In any case, evidence was presented that Klein had an inoperable headlight and that Klein was driving a vehicle with plates registered to a different vehicle. *See State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004) ("A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment.").

[7] We note that D.S.'s testimony at trial (which occurred approximately 19 months after the suppression hearing and approximately 29 months after the traffic stop) was different than his testimony at the suppression hearing. At trial, D.S. testified that the search to which Klein consented was a patdown search, whereas at the suppression hearing D.S. testified that Klein consented to a search of his person. However, even if we were only to consider the evidence at

Point one is denied.

## Point Two

In his second point, Klein argues that there was insufficient evidence that he was in possession of a controlled substance because the laboratory drug testing methods used by the Missouri State Highway Patrol Crime Laboratory were unreliable. Klein argues that the laboratory conducted a standard Gas Chromatograph-Mass Spectrometer test but failed to conduct additional testing necessary to determine the chemical composition of the substance which was seized in order to determine what type of methamphetamine the substance was.

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Twitty*, 506 S.W.3d 345, 346 (Mo. banc 2017) (quoting *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005)). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* (quoting *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)).

trial (rather than the evidence at trial and the suppression hearing as our standard of review provides, *see Pike*, 162 S.W.3d at 472), Klein's reliance on *Terry* would still be misplaced as the authority for the patdown was based on Klein's consenting to the patdown rather than *Terry*'s authorization for a protective search. While a protective search patdown under *Terry* is limited to that which is necessary to discover weapons, a patdown authorized by consent would extend to the scope of the permission given and could extend to patting down a suspect for contraband as well as weapons.

Section 579.015.1 provides: "A person commits the offense of possession of a controlled substance if he or she knowingly possesses a controlled substance, except as authorized by this chapter or chapter 195." Section 195.017.4 classifies certain substances as included in Schedule II, and section 195.017.4(3) includes therein: "[a]ny material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: . . . [m]ethamphetamine, its salts, isomers, and salts of its isomers[.]" § 195.017.4(3). Section 195.010(38) provides that a person possesses a controlled substance when, "with the knowledge of the presence and nature of a substance" the person "has actual or constructive possession of the substance. . . ." Section 195.010(38) further provides that a "person has actual possession if he has the substance on his or her person or within easy reach and convenient control."

Klein does not challenge on appeal his possession or awareness of the nature of the substances that were in his possession. Instead, Klein argues that the State "failed to conduct the necessary additional derivation test to determine the [] composition of the methamphetamine due to the chemical similarities and minor [] differences between D-enantiomer and L-enantiomer methamphetamine."[8]

---

[8] Klein goes on to suggest (with very little explanation) that the distinction between the chemical content of the two types of methamphetamine matters under Missouri law; whereas the State argues that either type of methamphetamine is considered a Schedule II controlled substance. For reasons discussed, we need not address the distinction between the two substances.

J.K., a criminalist in the drug chemistry section of the Missouri State Highway Patrol Crime Laboratory for 19 years, testified at trial. J.K. testified that her job duties are to test evidence submitted for the presence of controlled substances. J.K. testified that she tested two items related to Klein. J.K. testified that the first item was a crystalline substance that weighed 5.19 grams plus or minus 0.05 grams. J.K. testified that the second item was a crystalline substance that weighed 24.06 grams plus or minus 0.05 grams. On both items, J.K. testified that she performed color tests and gas chromatograph-mass spectrometer tests. J.K. testified that these tests were the testing procedures taught at the Missouri State Highway Patrol Crime Laboratory, and that these tests were widely used in her profession. J.K. testified that she determined that both items were methamphetamine, a Schedule II controlled substance.

Klein did not object to any of J.K.'s testimony. Following J.K.'s direct testimony, the State moved to admit Exhibit 4, which was a copy of J.K.'s lab report, as well as Exhibit 5, which contained the substances recovered from Klein. At that point, Klein objected and stated: "We're basically objecting to all the evidence that's being presented based on the suppression motions and issues filed by previous Counsel . . . that we renewed earlier as being . . . an unlawful search and seizure." Klein's objection was overruled. Klein made no specific objection or argument at that time regarding the admissibility of J.K.'s test results or testimony as being unreliable. In any case, his

objection came after J.K. had already testified, without objection, that the substances recovered from Klein were methamphetamine.[9]

J.K.'s testimony, which was received into evidence without objection, was sufficient to establish that the substances recovered from Klein were methamphetamine. "Missouri has recognized gas chromatograph as [a] reliable test 'for the measurement, separation and identification of particular organic compounds—drugs, among them.'" *State v. Rios*, 840 S.W.2d 284, 288 (Mo. App. W.D. 1992) (quoting *State v. Price*, 731 S.W.2d 287, 291 (Mo. App. W.D. 1987)). The State's evidence was sufficient to establish that Klein was in possession of the controlled substance methamphetamine.[10]

Point two is denied.

### Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.

---

[9] Klein's second point contends that his conviction must be reversed because the laboratory drug testing methods used by the Missouri State Highway Patrol Crime Laboratory are unreliable. By challenging the reliability of the testing conducted by J.K., Klein's arguments would seem to be challenging the admissibility of J.K.'s testimony rather than the sufficiency of the evidence. However, Klein failed to preserve a challenge to the admissibility of J.K.'s testimony.

[10] On appeal, Klein cites to numerous federal cases that discussed the issue of purity calculations for purposes of federal sentencing guidelines based upon distinctions in the sentencing guidelines. We find these cases inapposite. Klein fails to make a sufficient argument as to why or how these cases would be relevant to his conviction under Missouri law.